NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1899-15T1

IN THE MATTER OF TAKIA JOHNSON,
CAMDEN COUNTY DEPARTMENT OF
CORRECTIONS.

_____

Submitted May 2, 2017 — Decided May 15, 2017

Before Judges Ostrer and Vernoia.

On appeal from the Civil Service Commission,
Docket No. 2015-3106.

William B. Hildebrand, attorney for appellant
Takia Johnson.

Christopher A. Orlando, County Counsel,
attorney for respondent Camden County
Department of Corrections (Howard L. Goldberg,
First Assistant County Counsel, and Antonieta
Paiva Rinaldi, Assistant County Counsel, on
the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey Civil
Service Commission (Pamela N. Ullman, Deputy
Attorney General, on the statement in lieu of
brief).

PER CURIAM

Appellant Takia Johnson appeals the Civil Service

Commission's (Commission) final agency decision finding the Camden

County Department of Corrections (CCDC)[1] properly removed appellant from her position as a county corrections officer for insubordination, conduct unbecoming a public employee, neglect of duty, and other sufficient cause including violations of CCDC's rules and regulations. We reject appellant's argument that the sanction of removal was excessive, and affirm.

## I.

CCDC hired appellant as a county corrections officer in 2003. During the course of an investigation of officer Michael Jacob's possession of cell phones in the Camden County jail, the CCDC's internal affairs unit discovered numerous text messages exchanged between Jacob and appellant while appellant was on-duty.

Appellant was interviewed and acknowledged bringing her cellphone into the jail and using it to send messages, make phone calls, and send pictures to Jacob while she was on duty. She admitted possessing and using her cellphone while on duty with prisoners at the hospital. In addition, she explained she took a photograph with her phone of another officer's naked buttocks without his knowledge while they were on duty at the hospital, and sent the photograph to Jacob. She also admitted knowing it was a violation of CCDC's policy to bring a cellphone into the jail and

[1] The CCDC is also occasionally referred to in the record as the Camden County Correctional Facility.

to the hospital while on duty, and that doing so constituted a breach of security.

On January 26, 2015, CCDC issued a preliminary notice of disciplinary action for removal, charging appellant with: insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.S.A. 4A:2-2.3(a)(7); other sufficient cause, N.J.S.A. 4A:2-2.3(a)(12); and violations of various CCDC policies and rules. Following a departmental hearing, the CCDC removed appellant effective June 29, 2015.

Appellant appealed, and the Commission referred the matter to the Office of Administrative Law. A hearing was conducted before an Administrative Law Judge (ALJ) who issued an initial written decision sustaining each of the charges and CCDC's decision to remove appellant. Appellant filed exceptions to the ALJ's decision. On December 18, 2015, the Commission issued its final decision adopting the findings and conclusions of the ALJ and determining CCDC's removal of appellant was justified. This appeal followed.

On appeal, appellant argues:

> Point I
>
> REMOVAL IS TOO HARSH A PENALTY FOR A CELL PHONE VIOLATION.

Our role in reviewing the Commission's decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div.) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)), certif. denied, 170 N.J. 85 (2001). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, supra, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, supra, 192 N.J. at 28. "In light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness."'" Id. at 28-29 (alteration in original) (quoting In re Polk, 90 N.J. 550, 578 (1982)). "The threshold of 'shocking' the

court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29.

"In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, supra, 208 N.J. at 194 (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). To determine whether an agency action is arbitrary, capricious, or unreasonable, we must examine

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting Carter, supra, 191 N.J. at 482-83).]

The findings of fact made by an administrative agency are binding on appeal if they are supported by "sufficient credible evidence." In re Taylor, 158 N.J. 644, 656-57 (1999). We are not however bound by the agency's legal conclusions, which we review de novo. A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div.), certif. denied, 200 N.J. 210 (2009).

Applying these principles, we are satisfied there is no basis to reverse the Commission's decision sustaining appellant's removal. She contends that removal is excessive because the CCDC and Commission failed to employ principles of progressive discipline. She argues this was her first offense for improper use of a cell phone and that, although what she did was wrong, it was not sufficiently egregious to warrant her removal.

The concept of progressive discipline has been employed in two ways: "(1) to 'ratchet-up' or 'support imposition of a more severe penalty for a public employee who engages in habitual misconduct'; and (2)'to mitigate the penalty' for an employee who has a record largely unblemished by significant disciplinary infractions." Stallworth, supra, 208 N.J. at 196 (quoting Herrmann, supra, 192 N.J. at 30-33). Progressive discipline is not, however, "'a fixed and immutable rule to be followed without question,' because 'some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished record.'" Ibid. (quoting Carter, supra, 191 N.J. at 484). For example, "progressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes a risk of harm to persons or property." Herrmann, supra, 192 N.J. at 33.

Here, appellant engaged in an ongoing, knowing, and intentional violation of the CCDC's rules while on duty, which, as the ALJ recognized, "compromised the security and functioning of the correctional facility, [and] jeopardized the safety of fellow staff members." While on duty, she also photographed a partially naked fellow officer without his knowledge and sent the photograph to Jacob. Thus, we discern no abuse of discretion in the Commission's conclusion that the egregiousness of appellant's conduct alone warranted her removal. Ibid.

Moreover, the record shows appellant received formal discipline seventeen times for offenses including neglect of duty, abuse of position, conduct unbecoming a public employee, and insubordination. She received two verbal reprimands, three reprimands, five "day fine(s)," and eight separate suspensions of between two and ninety days. Thus, the Commission's reliance on appellant's history of habitual misconduct is consistent with notion of progressive discipline, Stallworth, supra, 208 N.J. at 196, and its decision sustaining her removal is not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION